Number 242362, Nachman v. Tesla. Good morning. May it please the court. Your honors, the district court entered two erroneous orders in this case that should be reversed. First, the district court erred when it dismissed plaintiff's claims on statute of limitations grounds, which is affirmative defense at the pleading stage, the Rule 12b6 stage. Second, the district court also erred when it denied leave to amend, also at the Rule 12b6 stage on futility grounds. It misapplied the standards for futility and Rule 12b6. With respect to the order dismissing the claims on statute of limitations grounds, the court erred for multiple reasons that we set forth in our briefs, but I think they can be boiled down to the court misapplied Gaydon v. Guardian Life Insurance Company, the decision of the New York Court of Appeals, and the court also misapplied the rule that's set forth in the Second Circuit's decision in Michael Greco v. RE Design. With respect to Gaydon, Gaydon makes clear that claims under New York general business law section 349 and 350 accrue when all elements of the claim have been met. And specifically in situations like the case before the court, where you're talking about future promises, promises of future conduct, Gaydon holds that the claim doesn't accrue until the unrealistic expectations created by the defendant are actually not met. And when did that happen here? When were the expectations not met? That is not clear from the face of the pleading. And so we admit that we have not said in the pleading exactly when that date is, but under Michael Greco, we don't have to. So you can evade the statute of limitations by not pleading when you do something that's an element of your claim? Well, respectfully, Your Honor, the timeliness, and this is the Michael Greco case as well, timeliness is not an element of the claim under New York general business law section 349. Under Orlander v. Staples, the elements are consumer-oriented conduct, deception, which is evaluated. But injury is, right? Injury is an element of your claim. Correct. And so we need to know when you were injured in order to assess your claim, don't we? Not for Rule 12b-6 purposes at the pleading stage, I would argue no. Michael Greco says that timeliness isn't an element of the claim. So you're asking about when the plaintiff was injured, that still goes back to timeliness. In this case, timeliness- So you're saying you can just say, we were injured, and you can just make a conclusory allegations that we were injured? Well, I don't think it's conclusory. I mean, it's been many years. Tesla promised to deliver a self-driving automobile. The plaintiff paid $8,000 of his hard-earned cash for hardware for his vehicle that Tesla promised would one day be self-driving. It's still not self-driving. So what's the less part of that then? What is the injury? The injury is the price premium plaintiff paid on account of the statements that Tesla made that indicated that the car would become self-driving. There are multiple statements. I'll give you one example. So you're not alleging that you were injured by the failure of the company to deliver the promised product? Because that makes a big difference. And that's what the district court here said, was that the injury is what you just said, that you paid a price when you bought the car that was $8,000 more than you would have otherwise. But that's different, it seems to me, than the expectation that you bought it, you paid that premium expecting to receive a feature that you didn't. And that's not the injury you're alleging. The latter is exactly the injury we're alleging, because- That's not what you just said, I guess. Well, until we know that the statement is false, we don't know that the price premium is in fact an injury. Right, so for example, Tesla said, all you'll need to do is get in the car and tell your car where to go. That's paragraph 95 on A42. Now plaintiff understood at the time he bought the car that he couldn't just get in the car and tell it where to go, and it'd automatically go there on the day he bought it. It wasn't until much later that Tesla failed to deliver, and failed to deliver, and failed to deliver that he realized this is never gonna be self-driving. This statement is false. So when did he realize that? Well, we don't- I mean, he's the one to, right? Well, I think- He should know when he realized he was injured. I think it's the reasonable consumer. We have to take care of the, you know, under Gaydon, the claim accrues when all elements of the claim are met, and certainly one of the primary elements that we're saying is not met here is the reasonable consumer element. And so I think the question is, when would a reasonable consumer decide that Tesla's never gonna deliver on this promise? And admittedly, that's not clear from the pleading, but we think that by the time he filed the case, it was certainly clear that they're not gonna deliver. But exactly when that happened, we don't know, but we think that's a matter for discovery. For discovery about your own, because of the reasonable consumer and objective standard? Right, right. I'm sure Tesla has its own arguments about when the reasonable consumer standard was violated. It's a complex thing. There are probably multiple facts. We've laid out lots of statements made by Tesla that could influence the reasonable consumer, but ultimately, these are complex questions that can't be resolved in the face of the pleadings. But your client certainly would know. When did he have that aha moment? I paid $1,000 and I'm not getting a self-driving car. Was it the day before he filed his complaint? Presumably not. Was it three months before? Was it six months before? Was it after one alleged misrepresentation was made versus another? It makes sense what you're saying. We don't allege that in the complaint. I think at the 12B6 stage, what we believe- No, no, we know. That's why we're here, right? To determine the statute of limitations. Right, but we're also not required to allege that in the complaint. It's true we don't allege that in the complaint. Let's say you go back, we remand, and the district court then does what you're saying, what you're asking for, has discovery on when the claim occurred. How would it determine that? Well, I think ultimately it's a fact question. It may need to be decided by a jury. What's the specific fact question that the district court would have to decide? When would a reasonable, given Tesla's conduct and its representations and the status of the automobile, when would a reasonable consumer believe that Tesla has failed to deliver? So based on texts from the company and- Well, I think it also goes to feasibility of creating a self-driving car. How long is reason, is it, you know, it could be, this is a new technology. Admittedly, maybe it would take three or four or five years to figure out how to create it. Where does the disclaimer language fit into this? It says that it's basically, it's not possible to know exactly when each element of the functionality described above will be available. That you had when you bought the car. Right, right, exactly, and that supports the idea that possibly the Tesla would have had longer than three years to try to figure this out. I mean, they informed plaintiff, you know, they're gonna need some time here. Plaintiff reasonably waited, but eventually you can't wait forever. He paid $8,000, he wants a self-driving car. He, I guess he waited more than three years, but eventually he should be able to either have the self-driving car or get his money back. Can I ask you one other thing about the autopilot feature? It looks like there's two features that were part of this package, the autopilot and the full self-driving. The complaint includes allegations about the autopilot not working, having some glitches, but it sounds like your client did actually have that feature. It just wasn't really working great. Yeah, I think that's fair. They did deliver hardware, but, and the key. I mean, there was some autopilot functionality going on. Paragraphs 102, 103, 104. Correct, they did deliver some software and there is some level of self, you know, the complaint sets forth different levels of self-driving SAE levels. Plaintiff was expecting SAE level five, full autonomous driving, and he never got that. So I guess my question is if you knew that the autopilot wasn't really working right, but you had it, wouldn't that be enough to put you on notice? Well, that's exactly the kind of fact question that we should, you know, look into in discovery and make arguments after having discovered facts. It's not the kind of thing that should be decided in the pleadings. Michael Greco. Okay, thanks. You've reserved a couple minutes for a moment. Okay, thank you. May it please the court. I'd like to start with explaining why Nachman's claims accrued when he allegedly paid the price premium. And I'd like to highlight three reasons, which I think were highlighted by Your Honor's questions. I think first and most simply, it's settled law that GBL 349 and 350 claims accrue at the time of injury. And as Your Honor pointed out, the only injury that was alleged in the original complaint was paying a price premium, and that occurred at one moment in time. The plaintiff is the master of his complaint. He gets to choose how he satisfies the element of injury. But let me ask, if he had sued the day after he paid the price premium, wouldn't your response have been, we said it's gonna come, it's equipped, and we've showed you the website, and you're gonna be set to go, but it's just not ready quite yet, and we revised you of that. So wouldn't you have made that kind of a challenge to his complaint at that moment? I think his claim would have been ripe at that moment if he was asserting the nature of the claim he alleges here. He may have struggled to plausibly support that claim because there may have been facts that had not yet occurred, or he had not yet discovered that he might have supported the plausibility of his claim. But in terms of his theory, which is that the forward-looking statement was wholly unrealistic. If it was wholly unrealistic to an objective observer, it would have been wholly unrealistic at the time that the statement was made. It's still Guyton that acknowledges that 349 and 350 actions can be brought on unrealistic expectations that are, at some point in the future, then not fulfilled. So I'm not really sure how he could maintain the action right on the day after he purchased the car. Well, I think Guyton actually expressly acknowledges that GVL 349 and 350 have an injury accrual rule. It confronted a different injury theory than is alleged in this case. So in this case- I'm sorry, I just noticed the clock is not moving. Could I just pause for a second? Sorry about that. Guyton involved a different injury theory than is alleged in this case. So in Guyton- It was something that was gonna happen in the future that did not happen, and promises were made, maybe a more specific timeline in Guyton. You know, seven or eight years, the premiums would go away. But here it was, you know, in a year, in two years, based on public statements and representations generally made on the website, that this would happen in the couple of years that the car would be self-driving. So why is that not governing here? Because the economic injury that was alleged in Guyton was I would not have to pay vanishing premiums, and so there was a point in time at which the plaintiff was confronted with a choice, pay more or lose the coverage you already have. There's nothing comparable to that here. The only payment- Well, that was cleaner because it was clear that what had happened in the new bill arrived for premiums that wasn't expected. But the core of the reasoning, as I would get on, was that there were unrealistic expectations, and that's what sort of set everyone, you know, put everyone on notice that that's what had happened. Here we don't have something quite as clear, but there's unrealistic expectations, is the allegation that your friend, I think, is making. That's right, Your Honor, but the unrealistic expectations were tied to the injury that the plaintiff in that case claimed was his injury. And so in that case, the claimed injury was I now have to pay premiums past the vanishing point. The claimed injury here is a price premium. Wouldn't the injury also include the fact that they were paying higher premiums upfront for the expectation that the premiums would go away? I don't think so on the logic of Gaton, Your Honor. There's a claim, the injury accrual rule accrues when you first suffer the injury. So you don't have a sort of constantly accruing injury. And so the key to the decision in Gaton was that the court concluded that the first time they had suffered the injury was when they were faced with the choice, pay more or lose your coverage. Here, the only injury alleged, as Your Honor pointed out, the only injury alleged is an injury that took place at one moment in time, which was a price premium. But I do think the clarity of the- I mean, your friend, he said that, but then he also said that it was the failure to deliver. And I see that in the complaint as well. He was waiting for the feature that never came. It was never forthcoming or something like that. So I think, I don't know that we require the word injury in the complaint associated. It seems obvious. Judge Kearney asked you if he had sued the day after buying the car, it wouldn't have been right. If the day after he sued, you had delivered a full self-driving capability, you would say it's moot, wouldn't you? Well, I would say that he had not been injured, yes. He would not be able to establish that it was unrealistic. So, I mean, I think it seems implicit that it's either the money or the feature that he thought he was getting. Well, but he only paid the money that he claims was inflated. I mean, the theory of a price premium injury is that the statements, the deceptive statements, which had already occurred by the time he paid it, caused the price to be higher. At the moment he paid that price, if they really were wholly unrealistic expectations, the price was inflated at that moment and he'd already suffered the injury. Now, I think what my friend on the other side is doing is actually transforming this from an injury rule into a discovery rule. So he says multiple times, well, we didn't know what our claim was. We didn't know that you weren't going to deliver. But that's about discovery. It's not about when you suffer the injury. And I think the clarity of the accrual, as Your Honor pointed out, is actually an important aspect of this problem. New York law demands right-line accrual rules. And in fact, that's one of the virtues of the rule in Gaydon. We knew exactly when the accrual rule. Here, we heard it's complex, it's uncertain, we don't know. That's exactly one of the problems with the unmet expectations in a case like this. Now, what we do know is precisely when the price premium was paid, and that's what my friend claims in the complaint was the injury at. But- Is it reasonable to infer at this stage that the enhanced driving visualization for owners with full self-driving capability computer that Mr. Nachman bought would be more expensive because consumers generally believe that Tesla would soon be developing its fully self-driving cars and fulfilling its repeated promises over the years? And so wouldn't that reset the clock? I don't think so, Your Honor. I think it would have to be actually alleged in the complaint. And that's not something he does. Now, the complaint does not allege that there was anything misleading about the statement surrounding the infotainment system. And he never alleges that he, he actually doesn't allege that he paid more at any point for the infotainment upgrade. He simply says in the new paragraphs that were added, I paid for the infotainment upgrade and he got the infotainment upgrade. What he doesn't say is that he paid for it in order to get the functionality that he says he was promised back in 2016. The infotainment upgrade, though, includes that language that I just read about enhanced driving visualization for owners with the full self-driving capability computer. So that's still, that is a new promise, isn't it, about self-driving? But he doesn't claim he didn't receive that. I mean, he did, he alleges, yes, I paid for an infotainment upgrade that had enhanced driving visualization features. He doesn't claim, and I didn't get it. And so there was nothing false about the statement. We're selling you an upgraded infotainment upgrade and he's- And it's not a fresh, it's not a fresh promise about the self-driving capabilities being, you know, available or imminently available? I don't think there's anything alleged in the complaint that suggests it is. I mean, it was a statement about a particular feature, enhanced driving visualization. He doesn't claim he didn't receive that enhanced feature and he doesn't plausibly establish any connection between these prior statements. Now, but I do, one thing I want to address, there was a number of questions about, well, these statements seem to say one year in the future, two years, three years in the future. And so, you know, I've been talking about why his reading of Gaydon and the accrual rule is wrong, but I think even if you were to accept his articulation of the accrual rule, we would, it would still be an untimely claim. Because- Because of your alternative argument that the accrual, the injury happened, or the unrealized expectation happened in, when was it, late 2017? Because there was a demonstration that was supposed to happen that didn't? At a minimum by late 2017. And this again relates to the fact that there has to be, the claim accrues when the plaintiff first suffers the injury. So there are a number of statements that are in the complaint where he says, well, look, in October of 2016, Mr. Musk said, we'll have you by the end of next year, this is in paragraph 49, by the end of next year, we'll have a demonstration drive to show cross-country driving. There's no question that didn't happen. This happened several times, though, at least, right? Where some demonstration or feature promise was not delivered, but then it was also accompanied by another feature promise of something, of a new timeline, right? So I think, so I think there's actually an important problem with the argument that appears in the reply brief that elides how this rule has to work. There's a number of statements in the complaint that were made after he purchased the package in 2016. Those are irrelevant. There has to be causation between the alleged deception and the injury that you suffer. The fact that there were statements after December of 2016 can't be an accrual. Now, they might go to tolling, but Mr. Nachman has forfeited, affirmatively forfeited, any reliance on tolling. And so the only statements that we really wanna focus on are in paragraphs 36, 37, 41, and 49. Why is that? I mean, if we're assuming for this argument that the injury is when an expectation is not met, and if after the purchase there are tweets saying it's one more year, one more year, why isn't that something that should be considered? Well, I don't even think Mr. Nachman argues the injury was not paying a premium. And so the injury, he said, I paid a premium in December of 2016. And the only thing that could have caused whatever premium he paid in December 2016 is our alleged deceptive statements that happened before December 2016. Any statements that happened- So your alternative argument still depends on the injury being the premium, not the failure to deliver the product. Well, I think it's, I guess even if you accept that somehow the failure to deliver the product is related to the price premium, it's related only insofar as it relates back to having something that caused the price premium in the first place. I mean, there can't be a causal connection between being induced somehow to pay out more money by something that happened after that occurs. If there's no further questions. Thank you. Thank you, counsel. We'll hear a rebuttal. Thank you, Your Honor. Few quick things. First, on the accrual time, I would point out that the district court's order is absurd because at the time that the plaintiff paid the money, the $8,000 for the features, he didn't know whether the statements that the car would one day become self-driving were false or not. So to say that the injury occurred on that date, it doesn't make sense because there was no misleading statement at that time, or at least you didn't know what the statements, you don't know whether it's misleading until some future time. Second, on the discovery rule, the discovery rule presumes that all elements of the claim have been met, and then the question is whether the plaintiff discovered the problem or should have discovered the problem. But in our case, that's not what we're saying. We're saying that all of the elements are not met, at least not at the time of purchase. The question we're asking is when do all of the elements become met? So we're not presuming initially that they're all met and then asking when should the plaintiff have discovered it. The complaint alleges that he purchased the car on 12, December 31st, 2016. He paid $8,000 for the FSDC package. There's a representation in January of 2016, and up to that point, where this self-driving car would be available within two years at maximum. Why didn't he bring his claim in 2018? When that, if the claim is that the promise to purchase this was based on misrepresentations that it would be available before he paid the money, why not bring the case in 2018? Why wait six years? See, that's the thing we're struggling with. Right, so at the time the plaintiff purchased the car, Tesla repeated promises about making the car self-driving, but that Tesla did not provide any particular date. It said that it's going to have self-driving. I thought the January 2016 statement was two years, and then there was a subsequent statement of within a year. Right, but he purchased the car on December 31st, 2016. On December 31st, 2016, Tesla made statements such as the statement about the smart summoning. He would be able to summon the car from anywhere, and he would be able to get in the car, and it would drive him anywhere. Those statements were not dated. So I think a fact question arises as to whether a reasonable consumer would just look at the January statement, or instead would they look at the statement that was actually made at the time of purchase that he relied on when he purchased the car. Well, but the January statement put a two-year mark on it. It did have a two-year mark. Right, well, but the more recent statement that happened on the day of purchase conflicts that statement, or at least it doesn't confirm it because it doesn't include a date. I think I might have exceeded the time. I had some other points, but given that I'm out of time, well, thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.